UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON E. PARKER, Jacket #20168,

                                    Plaintiff,

                v.

OFFICER PHILLIP FANTASIA,

                                    Defendant.

No. 16-CV-4265 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Aaron E. Parker
Comstock, NY
*Pro se Plaintiff*

Brian S. Sokoloff, Esq.
Gil Auslander, Esq.
Sokoloff Stern LLP
Carle Place, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

    Pro se Plaintiff Aaron E. Parker ("Plaintiff") brings this Action against Defendant Officer

Phillip Fantasia ("Defendant"), pursuant to 42 U.S.C. § 1983, alleging that Defendant violated

his rights under the Fourth Amendment in connection with a September 15, 2015 search of

Plaintiff's apartment.  (*See generally* Compl. (Dkt. No. 1).)  Before the Court is Defendant's

Motion for Summary Judgment (the "Motion").  (*See* Not. of Mot. (Dkt. No. 99).)  For the

reasons explained herein, the Motion is granted.

## I. Background

### A. Factual Background

The Court has described the allegations and procedural history of this case in a prior Opinion & Order (the "Opinion"). (Sept. 26, 2017 Op. & Order ("Op.") 2–3 (Dkt. No. 47).) The Court therefore assumes familiarity with the dispute and will provide factual and procedural background only as relevant to the instant Motion.

The following facts are taken from Defendant's statement pursuant to Local Civil Rule 56.1, (Def.'s. Local Rule 56.1 Statement ("Def.'s 56.1") (Dkt. No. 102)), Plaintiff's Complaint, and the admissible evidence submitted by the Parties.[1] Defendants have sent the required Rule 56.2 Notice to Plaintiff. (*See* Dkt. No. 103.)

---

[1] Although "a plaintiff's pro se status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment," *Almonte v. Florio*, No. 02-CV-6722, 2004 WL 60306, at *3 n.10 (S.D.N.Y. Jan. 13, 2004) (citation and italics omitted), where a plaintiff "verifie[s] his complaint by attesting under penalty of perjury that the statements in the complaint [are] true to the best of his knowledge," the "verified complaint is to be treated as an affidavit for summary judgment purposes," *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that the plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment").

Here, Plaintiff's Complaint includes a signed and dated verification page stating that Plaintiff declares the contents of the filing to be true under the penalty of perjury. (Compl. 4.) Therefore, the Court will accept for purposes of this Motion all admissible facts set forth in Plaintiff's Complaint that are based on Plaintiff's personal knowledge and about which Plaintiff is competent to testify. *See Colon*, 58 F.3d at 872 ("A verified complaint is to be treated as an affidavit for summary judgment purposes . . . provided that it meets the other requirements for an affidavit under Rule 56(e) . . . requiring affidavits to be made on personal knowledge, to set forth facts that would be admissible in evidence, and to demonstrate the affiant's competency to testify to the matters in the affidavit . . . ."); *James v. Gage*, No. 15-CV-106, 2019 WL 1429520, at *7 (S.D.N.Y. Mar. 29, 2019) (finding it appropriate to consider the pro se plaintiff's first amended complaint as well as opposition papers in deciding a motion to dismiss); *Jenkins v. Chase Bank USA, N.A.*, No. 14-CV-5685, 2015 WL 4988103, at *1 n.1 (E.D.N.Y. Aug. 19, 2015) ("The Court may . . . draw on facts alleged in the [c]omplaint and [a]mended [c]omplaint because even though the [s]econd [a]mended [c]omplaint is the operative pleading, the [c]ourt may still credit

### 1.  The Parties

Plaintiff is currently incarcerated at Washington Correction Facility.  During the relevant time period, Plaintiff had been arrested by members of the New York State Police and charged with felony possession of controlled substances.  (Def.'s 56.1 ¶ 17 (citing Aff. of Brian S. Sokoloff, Esq. ("Sokoloff Aff.") Ex. E ("Def.'s Aff.") ¶ 13 (Dkt. No. 100-5)).)[2]  Defendant,

---

admissions in the original complaint and attached exhibits." (citation, alteration, and quotation marks omitted)); *Poindexter v. EMI Record Grp. Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("[E]ven though the [a]mended [c]omplaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits" (citation omitted)); *Johnson v. Doe*, No. 00-CV-3920, 2001 WL 314618, at *1 (S.D.N.Y. Mar. 30, 2001) ("Although a verified complaint may serve as an affidavit for summary judgment purposes . . . mere verification does not transform rhetoric, conclusions, and other non-admissible statements into admissible evidence." (citation omitted)).

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  The nonmoving party must then submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same). "A pro se litigant is not excused from this rule," *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (citation and italics omitted). Here, Defendant filed his 56.1 Statement, (Def.'s 56.1), in addition to a statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (Dkt. No. 103).  Despite this notice, Plaintiff failed to submit a response to Defendant's 56.1 Statement.  Accordingly, the Court may conclude that the facts in Defendant's 56.1 Statement are uncontested and admissible.  *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citations omitted), the Court will "in its discretion opt to conduct an assiduous review of the record" when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted); *see also Houston v. Teamsters Local 210,*

currently a detective at the Village of Spring Valley Police Department ("Spring Valley Police"), was employed as a police officer with the Spring Valley Police during the relevant time period. (*Id*. ¶¶ 1, 3 (citing Def's Aff. ¶ 1).)  Defendant has been a member of this police department for approximately 11 years.  (*Id.* ¶ 2 (citing Def.'s Aff. ¶ 1).)  Prior to this position, Defendant was a member of the Village of Tuxedo Park Police Department, Village of Chester Police Department, and Town of Walkill Police Department.  (*Id.* ¶ 3 (citing Def.'s Aff. ¶ 1).)

### 2. The Investigation and Warrant Application

Since 2013, Defendant has been assigned to the Rockland County Drug Task Force ("RCDTF"), which "investigates and prosecutes people and organizations involved in trafficking controlled substances and their illicit proceeds in Rockland County."  (*Id.* ¶¶ 4–5 (citing Def.'s Aff. ¶ 2).)  The RCDTF employs "investigative personnel from the Rockland County District Attorney's Office, the Rockland County Sheriff's Department, and local police departments." (*Id.* ¶ 6 (citing Def.'s Aff. ¶ 3).)  Since being assigned to the RCDTF, Defendant has "conducted several investigations of state narcotics offenses," and has "applied for and received court-ordered authorization to search premises and to conduct electronic surveillance."  (*Id.* ¶ 7 (citing

*Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response (citation omitted)); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (citation, italics, and quotation marks omitted)).  The Court will therefore consider whether any facts in the record or in Plaintiff's Complaint contradict Defendant's 56.1 Statement.

Def.'s Aff. ¶ 4).)  Defendant became the lead investigator of one such drug trafficking

investigation, nicknamed "Operation Money Mike," around May 2015.  (*Id.* ¶ 8 (citing Def.'s

Aff. ¶ 5).)  The investigation involved "electronic surveillance and other law enforcement

investigative techniques," and Plaintiff was one of the subjects of the investigation for possible

sale and distribution of heroin and cocaine.  (*Id.* ¶¶ 9–10 (citing Def.'s Aff. ¶¶ 6–7; Sokoloff Aff.

Ex. F ("Warrant Application") (Dkt. No. 100-6)).)

At some point during the investigation, Defendant "acquired reasonable cause to believe

Plaintiff was using his apartment[,] [located] at 220 Kearsing Parkway, Apartment F, Monsey,

New York, to store and sell cocaine and heroin."  (*Id.* ¶ 11 (citing Def.'s Aff. ¶ 8; Warrant

Application).)  Defendant thus prepared a search warrant application (the "Warrant Application")

for this address, which he submitted to Justice Alan Simon ("Justice Simon") of the Village of

Spring Valley Justice Court ("Justice Court") on September 14, 2015, along with "multiple

duplicate original copies of the proposed search warrant."  (*Id.* ¶¶ 12–14 (citing Def.'s Aff. ¶¶ 9–

11; Warrant Application; Sokoloff Aff. Ex. Q ("Simon Aff.")  ¶ 4 (Dkt. No. 100-17)).)[3]

### 3.  Warrant Application

On September 14, 2015, duplicate copies of Defendant's proposed search warrant were

signed with Justice Simon's name (the "Warrant").  (*See* Compl. 3; Def.'s 56.1 ¶ 16 (citing

Def.'s Aff. ¶ 12; Sokoloff Aff. Ex. G ("Search Warrant") (Dkt. No. 100-7); Simon Aff. ¶¶ 5–6).)

Plaintiff states that Defendant and the RCDTF forged Justice Simon's signature on the Warrant.

---

[3] Justice Simon no longer serves in this capacity and is currently the Mayor of the Village
of Spring Valley.  (*See* Compl. Ex. D; Simon Aff. ¶ 3.)

(Compl. 3; Sokoloff Aff. Ex. M ("Pl.'s Dep. Tr."), at 74 (Dkt. No. 100-13).) According to Plaintiff, the signature differs on the two copies of the Warrant that he has seen. (*Id.*)[4]

According to Defendant, Justice Simon himself reviewed the Warrant Application and signed each copy of the Warrant on September 14, 2015, thus authorizing the search. (Def.'s 56.1 ¶¶ 15–16 (citing Def.'s Aff. ¶ 12; Search Warrant; Simon Aff. ¶¶ 5–6).) The Warrant was kept on file with the Justice Court, (*id.* ¶¶ 52, 55 (citing Sokoloff Aff. Ex. D ("Cheron Aff.") (Dkt. No. 100-4)), which provides search warrants directly to the Spring Valley Village Court ("Village Court"), (*id.* ¶ 53 (citing Cheron Aff.)). Defendant avers that the search warrant on file with the Justice Court is the same as the warrant signed by Justice Simon, the same as the warrant received by Defendant from Justice Simon authorizing the search, and the same as the warrant attached to the Complaint. (*Id.* ¶ 56 (citing Cheron Aff. ¶ 2 and attachments; Simon Aff. ¶ 6; Def.'s Aff. ¶ 12; Search Warrant; Compl. Ex. A).)[5]

### 4. Warrant Execution

On September 15, 2015, Defendant and other members of RCDTF executed the Warrant between approximately 1:30 a.m. and 2:00 a.m. (Compl. 3; Def.'s 56.1 ¶ 18 (citing Def.'s Aff. ¶ 13).) Plaintiff was not at his apartment during the search because he had been arrested for felony possession of controlled substances on the previous day, (*id.* ¶¶ 17, 19 (citing Def.'s Aff. ¶ 13)), but contends that the Warrant was forged, and his "home was destroyed," resulting in his

---

[4] It bears noting that Plaintiff acknowledged in his deposition that he has not taken classes on handwriting analysis, does not have training in this field, and has not consulted with a handwriting analysis expert. (Pl.'s Dep. Tr. 74.)

[5] Justice Simon's Affidavit purports to attach a copy of the Warrant signed by Justice Simon. However, no such document was attached. On November 12, 2019, at the request of the Court, counsel for Defendant separately submitted the document that was intended to be attached to Justice Simon's Affidavit to the Court. (Letter from Brian S. Sokoloff, Esq. to Court (Nov. 12, 2019) ("Sokoloff Nov. 12 Letter") (Dkt. No. 113).)

eviction by his landlord, (Compl. 3). Plaintiff further states that his property was seized during the search, including a safe deposit box and U.S. currency. (*Id.*)

During the search, Defendant and the other RCDTF members recovered "contraband and other evidence" from Plaintiff's apartment, including bags of white pills, tan powder, and a "white chunky substance." (Def.'s 56.1 ¶ 20 (citing Def.'s Aff. ¶ 14); Sokoloff Aff. Ex. H ("Warrant Inventory") 1 (Dkt. No. 100-8); *id.* Ex. P ("Warrant Receipt") (Dkt. No. 100-16).) Defendant and the other RCDTF members also found and confiscated three handguns, two of which were in a safe, and one of which was on top of the safe. (Def.'s 56.1 ¶ 21 (citing Def.'s Aff. ¶ 14; Warrant Inventory; Sokoloff Aff. Ex. J ("Judge Zuckerman Order"), at 9 (Dkt. No. 100-10)).) Upon leaving the premises, Defendant left a Search Warrant Property Recovery Receipt (the "Warrant Receipt") at Plaintiff's apartment, which listed some of the property seized during the search. (*Id.* ¶ 22 (citing Def.'s Aff. ¶ 14; Warrant Receipt).)

After the search, Defendant delivered to Justice Simon one copy of the Warrant, the original Warrant Application, and an inventory of property seized during the search (the "Warrant Inventory"). (*Id.* ¶ 23 (citing Def.'s Aff. ¶ 15; Warrant Inventory).) On October 1, 2015, Defendant appeared before Justice Simon, who asked Defendant whether he "had received a search warrant from the court," "executed the search warrant in accordance with its terms," "inventoried items found during the search," and whether Defendant swore to this inventory. (*Id.* ¶¶ 24–27 (citing Def.'s Aff. ¶¶ 16–19; Warrant Inventory; Sokoloff Aff. Ex. O ("Oct. 1, 2015 Tr.") (Dkt. No. 100-15)).) Defendant responded in the affirmative to all of Justice Simon's questions. (*Id.* (citing Def.'s Aff. ¶¶ 16–19; Warrant Inventory; Oct. 1, 2015 Tr.).) Justice Simon then directed the court officer to "[a]sk the [c]lerk to put [the Warrant Inventory] in the file or file it appropriately." (Oct. 1, 2015 Tr. 2; Def.'s 56.1 ¶ 28 (citing Def.'s Aff. ¶ 19; Oct. 1,

2015 Tr.).)  Also on October 1, 2015, Justice Simon signed a Disposition of Seized Property pursuant to New York Criminal Procedure Law § 690.55(1) at the end of the Warrant Inventory. (*Id.* ¶ 29 (citing Def.'s Aff. ¶ 20; Warrant Inventory).)  Justice Simon's signature "acknowledg[ed] receipt of the property seized pursuant to the search warrant, and direct[ed] the property to be held in custody as set forth therein."  (*Id.*)  Defendant signed below Justice Simon's signature to "acknowledge receiving the property in accordance with Justice Simon's directive."  (*Id.* ¶ 30 (citing Def.'s Aff. ¶ 20; Warrant Inventory).)

### 5.  Indictments and Convictions

Based upon his arrest, Plaintiff was first charged under Indictment No. 2015-395 with criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree.  (*Id.* ¶¶ 31, 40 (citing Def.'s Aff. ¶ 21; Sokoloff Aff. Ex. L ("Jan. 17, 2017 Tr."), at 4 (Dkt. No. 100-12); Letter from Pl. to Court (Oct. 13, 2018) Ex. A ("Proposed Am. Compl."), at 38 (Dkt. No. 60-1)).)[6]  Plaintiff does not specify the date on which he was charged under this indictment.

On November 9, 2015, Plaintiff was charged in Rockland County Court under Indictment No. 2015-449 with two counts of conspiracy in the fourth degree, N.Y. Penal Law § 105.10(1), and under Indictment No. 2015-445 with criminal sale and possession of a controlled substance in the third degree, N.Y. Penal Law §§ 220.16(1), 220.39(1).  (Def.'s 56.1 ¶¶ 32–33 (citing Def.'s Aff. ¶ 22; Sokoloff Aff. Ex. I ("Indictments") (Dkt. No. 100-9)).)  These indictments were ultimately consolidated.  (*Id.* ¶ 38 (citing Proposed Am. Compl. 32).)

---

[6] For ease of reference, the Court refers to the ECF page numbers stamped at the top of each page of Plaintiff's October 13, 2018 letter to the Court, which includes a proposed amended complaint and accompanying exhibits.

On November 10, 2015, Plaintiff was charged under Indictment No. 2015-450 with criminal sale and criminal possession of a controlled substance in the third degree, N.Y. Penal Law §§ 220.16(1), 220.41(1), and under Indictment No. 2015-451 with conspiracy in the second degree, N.Y. Penal Law § 105.15. (Def.'s 56.1 ¶¶ 34–35 (citing Def.'s Aff. ¶ 22; Indictments).) These indictments were ultimately consolidated. (*Id.* ¶ 39 (citing Proposed Am. Compl. 34).) On the same day, Plaintiff was also charged under Indictment No. 2015-455 with operating as a major drug trafficker, N.Y. Penal Law § 220.77(2). (Def.'s 56.1 ¶ 36 (citing Def.'s Aff. ¶ 22; Indictments).)

Due to the recovery of three handguns during execution of the Warrant, Plaintiff was also charged under Indictment No. 2015-457 on November 10, 2015 with criminal possession of a weapon in the second degree, New York Penal Law § 265.03(3), two counts of criminal possession of a weapon in the third degree, New York Penal Law § 265.02(1), and criminal possession of a weapon in the third degree, New York Penal Law § 265.02(3). (Def.'s 56.1 ¶ 37 (citing Def.'s Aff. ¶ 23; Indictments).) This indictment, however, was dismissed by Judge David Zuckerman of Rockland County Court ("Judge Zuckerman") on March 30, 2016. (*Id.* ¶ 48 (citing Judge Zuckerman Order 14).) Plaintiff states that these charges were dismissed "once Judge Zuckerman found out about the forgery and the unlawful search." (Compl. 3.) Patricia Mortel ("Mortel"), who, according to Defendant's Warrant Application, is Plaintiff's girlfriend, (Warrant Application 3), also avers in a sworn statement that "Indictment 2015-457 . . . was dismissed by Judge Zuckerman pertaining to the illegal search on May 3[], 2016," (Compl. Ex. C ("Civilian Complaint Report"), at 1.) According to Defendant, however, the indictment was "deemed . . . defective due solely to the prosecutor's omission of a constructive possession charge to the grand jury." (Def.'s 56.1 ¶ 48.) According to the court's order, Judge Zuckerman

found that although "the presentation [of the charges] was defective due to [] improper instructions given to the [g]rand [j]ury[,] the [p]eople [were] . . . granted leave to re-present to a new [g]rand [j]ury." (Judge Zuckerman Order 13.)

On June 20, 2016, Plaintiff was convicted by a jury of criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree, pursuant to Indictment No. 2015-395. (Def.'s 56.1 ¶ 40 (citing Jan. 17, 2017 Tr. 4; Proposed Am. Compl. 38).) On October 16, 2016, Plaintiff pled guilty to two counts of conspiracy in the fourth degree and criminal sale and possession of a controlled substance in the third degree under the consolidated Indictment Nos. 2015-449 and 2015-445, (*id.* ¶ 42 (citing Sokoloff Aff. Ex. K ("Oct. 16, 2016 Tr."), at 44 (Dkt. No. 100-11))), and criminal sale and possession of a controlled substance in the third degree and conspiracy in the second degree under consolidated Indictment Nos. 2015-450 and 2015-451, (*id.* ¶ 44 (citing Oct. 16, 2016 Tr. 44)). Plaintiff also pled guilty to operating as a major drug trafficker under Indictment No. 2015-455. (*Id.* ¶ 46 (citing Oct. 16, 2016 Tr. 44).)

On January 17, 2017, Plaintiff was sentenced by Judge Zuckerman for each of the above offenses. With respect to Indictment No. 2015-395, Plaintiff was sentenced to ten years in prison, three years of post-release supervision, and a concurrent term of nine years in prison and two years of post-release supervision. (*Id.* ¶ 41 (citing Jan. 17, 2017 Tr. 7–8).) With respect to Indictment Nos. 2015-445 and 2015-449, Plaintiff was sentenced to nine years in prison and two and a half years of post-release supervision, a concurrent term of ten years in prison and two and a half years of post-release supervision, and a concurrent term of one to three years in prison. (*Id.* ¶ 43 (citing Jan. 17, 2017 Tr. 8–9).) With respect to Indictment Nos. 2015-450 and 2015-451, Plaintiff was sentenced to ten years in prison and two and a half years of post-release

supervision, a concurrent term of nine years in prison and two and a half years of post-release supervision, and a concurrent term of three to nine years in prison. (*Id.* ¶ 45 (citing Jan. 17, 2017 Tr. 9).) Finally, with respect to Indictment No. 445, Plaintiff was sentenced to ten years in prison and two and a half years of post-release supervision. (*Id.* ¶ 47 (citing Jan. 17, 2017 Tr. 8–9).)

B. Procedural Background

The procedural background of this Action until Defendants filed their Motion To Dismiss is addressed in this Court's previous Opinion. (Op. 3.)

At the Motion To Dismiss stage, the Court dismissed all claims against District Attorney Thomas P. Zugibe and Assistant District Attorney Maria T. Gaston-Desimone (the "DA Defendants") based on the Eleventh Amendment and the doctrine of prosecutorial immunity, (*id.* at 5–8, 18), all claims against Justice Simon based on judicial immunity, (*id.* at 15–16), and Plaintiff's state law and Eighth Amendment claims, (*id.* at 16–17). The Court also dismissed Plaintiff's claim against Defendant that the Warrant contained false statements, (*id.* at 10–11), but declined to dismiss Plaintiff's Fourth Amendment claims against Defendant based on the validity of the Warrant and damage of Plaintiff's property, (*id.* at 13–14). The Court gave Plaintiff leave to file an amended complaint within 30 days of the date of the Opinion, and advised that "[i]f Plaintiff does not file an amended pleading, the case will proceed only on the claim that [Defendant] violated Plaintiff's Fourth Amendment rights by forging [Justice] Simon's signature on a search warrant and searching Plaintiff's residence in reliance on the forged warrant." (*Id.* at 18.) The Court instructed that if Plaintiff failed to file an amended complaint, Defendant should file an answer within 60 days of the date of the Opinion. (*Id.*)

On November 7, 2017, Defendant subsequently filed an Answer to Plaintiff's Complaint, (Dkt. No. 49), and on June 8, 2018, the Court adopted a discovery schedule, (Dkt. No. 53). On September 19, 2018, Plaintiff docketed a letter requesting leave to amend the Complaint. (Dkt. No. 58.) The Court ordered Plaintiff to provide a copy of the proposed amended complaint and an explanation of what he sought to amend, (Dkt. No. 59), which Plaintiff filed on October 15, 2018, (the "Proposed Amended Complaint") (Dkt. No. 60). The Court construed Plaintiff's submission as a request to file an amended complaint, (Dkt. No. 63), thereafter referring the case to Magistrate Judge Lisa M. Smith ("Judge Smith") on January 8, 2019 for general pretrial matters, (Dkt. No. 74). Judge Smith subsequently deemed the Proposed Amended Complaint to be Plaintiff's Amended Complaint. (*See* Dkt. (minute entry for Feb. 7, 2019).) However, on March 19, 2019, at a status conference before Judge Smith, Plaintiff withdrew his Amended Complaint. (Dkt. (minute entry for Mar. 19, 2019); Hr'g Tr. 19–20 ("Mar. 19, 2019 Hr'g") (Dkt. No. 108).) During the conference, Plaintiff acknowledged that his sole remaining claim was "the Fourth Amendment claim that [Defendant] got a forged search warrant and conducted the search based on that forged search warrant." (*Id.* at 20.)

On April 22, 2019, Defendant requested leave to file a motion for summary judgment. (Dkt. No. 94.) The Court granted the request and ordered that Defendant file any such motion by June 1, 2019, Plaintiff submit a response by July 1, 2019, and Defendant file a reply by July 22, 2019. (Dkt. No. 97.) On May 7, 2019, Plaintiff sent the Court a letter reiterating his position on the Warrant and stating that "the motion by [Defendant] should be dismissed for summary judgment." (Letter from Pl. to Court (May 7, 2019) ("Pl.'s Opp'n") 1 (Dkt. No. 98).)[7] Given

---

[7] To avoid confusion, the Court cites the ECF page numbers stamped on the top of each page of this submission.

that Plaintiff is pro se, the Court construes this submission liberally to be Plaintiff's Response in Opposition to Defendant's Motion (the "Opposition".  Although filed before Defendant's Motion, Plaintiff's Opposition addresses arguments raised in Defendant's request for leave to file this Motion.

Defendant filed the instant Motion on May 31, 2019.  (Not. of Mot.; Def.'s Mem. of Law in Supp. of Mot. for Summary Judgment ("Def.'s Mem.") (Dkt. No. 101); Sokoloff Decl.; Def.'s 56.1.)  Plaintiff submitted no response after the Motion was filed, and Defendant submitted no reply.  The Court now deems the Motion fully submitted.

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . ., [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr*

*Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) (quotation marks omitted). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso*, 691 F.3d at 230 (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted).) Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "[w]here each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court."). And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003) (holding that "[t]he

credibility of [Plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact.").

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848 F.2d at 344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted). Moreover, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[] made in light of the opposing party's pro se status" (italics omitted)). "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (alterations, italics, and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

### B. Analysis

Defendant argues that Plaintiff has failed to state a viable claim that his Fourth Amendment rights were violated when Defendant executed a search of Plaintiff's home pursuant to the allegedly forged Warrant.

<u>1. Request for Additional Discovery</u>

Plaintiff requests a "graphologist" in his Opposition "to clear up the forging of the handwriting," stating that he has a "gut feeling . . . that Ju[stice] [] Simon did not issue his signature on the[] allege[d] [W]arrants." (Pl.'s Opp'n 2.) The Court construes this statement as a request to allow Plaintiff to conduct further discovery. *See Palacio v. Ocasio*, No. 02-CV-6726, 2006 WL 2372250, at *13 (S.D.N.Y. Aug. 11, 2006) (determining the same when the plaintiff requested, inter alia, additional depositions in an opposition to a motion for summary judgment). Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Any such affidavit or declaration "must describe: (1) what facts are sought and how they are to be obtained, (2) how such facts are reasonably expected to raise a genuine issue of material fact, (3) what efforts the affiant has made to obtain them, and (4) why the affiant's efforts were unsuccessful." *Walden v. Sanitation Salvage Corp.*, No. 14-CV-112, 2015 WL 1433353, at *2 (S.D.N.Y. Mar. 30, 2015) (citation omitted); *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (same).

Here, Plaintiff has not submitted an affidavit or declaration. Although Plaintiff is pro se, he has been served with a Local Rule 56.2 Notice, which attached Rule 56(d) and set forth the requirements for an affidavit supporting a Rule 56(d) discovery request. (*See* Dkt. No. 103.) "Nor [has] Plaintiff provide[d] the information necessary under Rule 56(d), even in a conclusory fashion." *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 522 (S.D.N.Y. 2015). Thus, to the extent that Plaintiff intends to seek additional discovery under Rule 56(d), his request is denied.

17

*See Gumbs v. Dynan*, No. 11-CV-857, 2012 WL 3705009, at *17 (E.D.N.Y. Aug. 26, 2012) (denying a pro se plaintiff's request for relief under Rule 56(d) because he failed to submit an affidavit, which would be sufficient grounds for denial on its own, and he also did not provide information on the "four categories of information requisite to [the] [c]ourt's permission to conduct Rule 56(d) discovery"); *Arriaga v. City of New York*, No. 06-CV-2362, 2008 WL 11411816, at *3 (S.D.N.Y. May 20, 2008) (denying a pro se plaintiff's request for additional discovery because the defendants complied with their discovery obligations, and the plaintiff had a "full and fair opportunity to conduct discovery[,] demonstrated an ability to obtain orders from [the] [m]agistrate [j]udge] . . . [, and] allowed the discovery period to close . . . without pressing . . . for further relief"); *see also Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 638 F. Supp. 2d 360, 371 (S.D.N.Y. 2009) ("The failure to file an affidavit under Rule 56(f) [now renumbered 56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." (citation and quotation marks omitted)).

### 2. Search Warrant

"To prevent . . . general, exploratory rummaging in a person's belongings and the attendant privacy violations, the Fourth Amendment provides that a warrant may not be issued unless probable cause is properly established[,] and the scope of the authorized search is set out with particularity." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (citations and quotation marks omitted). Thus, a search warrant must (1) be based on probable cause, (2) be supported by oath or affirmation, (3) describe with particularity the place to be searched, and (4) describe with particularity the things to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004). "[S]earches and seizures inside a home without a [valid] warrant are presumptively

unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (footnote and quotation marks omitted).

"Probable cause for a search exists 'where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *United States v. Feng Ling Liu*, No. 12-CR-934, 2014 WL 101672, at *3 (S.D.N.Y. Jan. 10, 2014) (alteration in original) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "[T]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause . . . ." *Golino v. City of New Haven*, 950 F. 2d 864, 870 (2d Cir. 1991) (citation omitted). "To rebut that presumption, a plaintiff must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 466 (S.D.N.Y. 2008) (citation and quotation marks omitted); *see also Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) ("A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden.").

Viewing the evidence in the light most favorable to Plaintiff, the Court finds no basis for concluding that the Warrant was forged and thus invalid. Plaintiff has stated numerous times that Justice Simon's signature on the Warrant was forged, and attached to his Complaint a sworn Civilian Complaint Report by Mortel stating the same. (*See* Compl. 3 ("[Defendant and RCDTF] falsely made a search warrant [and] forged a signature to enter my home . . . ."); Civilian Complaint Report 1 ("[Defendant] enter[ed] my apartment with a falsified warrant . . . ."); Pl.'s Dep. Tr. 74 (stating that the signatures on two copies of the warrants are

"not the same" and "[in] fact different").)  Plaintiff has further averred that he has "the proof to

show that the [Warrant] is . . . a forged document," submitting as "proof" two separate copies of

the Warrant, one that he received from Defendant, and the other that he received from his

appointed counsel.  (Pl.'s Opp'n 1, 3–4, 6–7.)  Plaintiff argues that the two copies are "entirely []

different" because the style of the dates and the judge's signature were not identical on each.  (*Id.*

at 1.)[8]  These statements, however, are wholly conclusory, if not entirely fanciful, and do not

establish any "basis [on which Plaintiff] learned that [Justice] Simon's signature was forged."

(Op. 12 n.6.)  "[P]laintiff may not survive a properly asserted motion for summary judgment on

the basis of conclusory allegations alone."  *Kia P. v. McIntyre*, 235 F.3d 749, 763 (2d Cir. 2000)

(citation omitted); *see also Blue v. City of New York*, No. 14-CV-7836, 2018 WL 1136613, at

*12 (S.D.N.Y. Mar. 1, 2018) (granting summary judgment where the plaintiff did not "provide

any evidence to question or otherwise dispute that the search[] of his apartment . . . [was]

pursuant to [a] lawful search warrant" and instead relied on "conclusory allegations of forgery

and fraud"); *United States v. Bailey*, No. 15-CR-6082G, 2016 WL 6995067, at *20 (W.D.N.Y.

Nov. 29, 2016) (concluding, in the context of a suppression hearing, that the plaintiff's

"speculation that the signature was forged is insufficient to find the warrant invalid"); *Dockery v.

Tucker*, No. 97-CV-3584, 2006 WL 5893295, at *19 (E.D.N.Y. Sept. 6, 2006) (finding that the

---

[8] With the same letter, Plaintiff also submits the Warrant Receipt signed by Defendant on
September 14, 2015, (Pl.'s Opp'n 5), and the Warrant Inventory, signed by Defendant on
September 15, 2015 and Justice Simon on October 1, 2015, (*id.* at 8–9).  Plaintiff does not
explain how these lists establish that Justice Simon's signature on the Warrant was forged, other
than to speculate, "I am very incline[d] to believe that [Justice] [] Simon would [not] over[look]
this amount of defects on a legal document."  (*Id.* at 1.)
    In his affidavit, Defendant elaborates on the difference between these two documents,
stating that he left the Warrant Receipt, which "itemize[d] property seized," inside Plaintiff's
home and that he provided the Warrant Inventory, which Justice Simon signed, to the court.
(Def.'s Aff. ¶¶ 14, 20.)

plaintiff's allegations that a warrant had been forged "d[id] not present a material issue of fact as to the existence of a valid active warrant," because "plaintiff provide[d] only conclusory allegations of the arrest warrant's invalidity" (citation omitted)).  Moreover, a reasonable jury could not conclude only from the face of the Warrant copies submitted by Plaintiff that Justice Simon's signature was forged, because Plaintiff has provided no basis for his allegation.  *See Wheeler v. Slanovec*, No. 16-CV-9065, 2019 WL 2994193, at *7 n.7 (S.D.N.Y. July 9, 2019) (noting that although the plaintiff attached the two warrants at issue to his complaint, he failed to "explain[] the basis for his allegation that [a] [w]arrant was forged" and instead was "entirely speculative and therefore insufficient to state a claim" (collecting cases)).

Defendant, on the other hand, submits consistent sworn statements from himself and Justice Simon regarding the signature on the Warrant.  Defendant states that he submitted the eight-page Warrant Application and duplicate copies of the Warrant to Justice Simon, who "reviewed the application and the proposed search warrant . . .[,] then signed each copy of the [Warrant] submitted as duplicate originals, authorizing the search of Plaintiff's apartment." (Def.'s Aff. ¶¶ 11–12.)  Justice Simon states the same; he received the Warrant Application and proposed Warrant from Defendant, "reviewed" both, and "then signed and dated the multiple duplicate original copies of the [Warrant] presented to [him]."  (Simon Aff. ¶¶ 4–6; Sokoloff Nov. 12 Letter Ex. A ("Simon Aff. Ex.").)  Further, at a hearing before Justice Simon after the search took place, Defendant confirmed that he "obtain[ed] a search warrant from th[e] [c]ourt" and "execut[ed] it according to its terms."  (Oct. 1, 2015 Tr. 2.)  The sworn affidavits and October 1, 2015 hearing transcript demonstrate "that the [Warrant] satisfied all requirements for validity: [it was] issued by [a] 'neutral, disinterested' judge[], there was 'probable cause to believe that the evidence sought would aid in a particular apprehension or conviction for a

particular offense,' and the [W]arrant specifically described the items 'to be seized, as well as the place to be searched.'" *Blue*, 2018 WL 1136613, at *12 (alteration omitted) (quoting *Lynch*, 567 F. Supp. 2d at 464–45). Conversely, "Plaintiff does not cite any evidence to support his belief in the falsity of [Defendant's] statements." *Id.* (comparing the lack of evidence submitted by the plaintiff to a sworn affidavit submitted by the defendant detective); *see also Thurman v. Allard*, No. 01-CV-8746, 2004 WL 2101911, at *12 (Sept. 22, 2004) (finding, in the context of a habeas motion, that the petitioner's claim that a parole violation warrant was forged "appear[ed] to be simply untrue" because the signatory "ha[d] submitted an affidavit stating unequivocally that she did in fact sign the warrant"); *O'Hagan v. Soto*, 523 F. Supp. 625, 628 (S.D.N.Y. 1981) (concluding that, when a judge who signed the arrest warrant at issue "unequivocally identified his signature [in a sworn statement during a deposition], and rejected the possibility of backdating or forgery[,] . . . [the] plaintiff [could] not avoid summary judgment . . . by merely alleging that the arrest warrant is a fabrication").

Plaintiff has repeatedly made several allegations throughout the history of this case in an attempt to support his forgery claim. First, Plaintiff has submitted to the Court on more than one occasion a notarized document, written and signed by his wife, Sharon Parker, which states that Ms. Parker went to the Village Court on July 2, 2018 and asked to see the Warrant. (Letter from Pl. to Court (Nov. 8, 2018) Ex. A ("Sharon Parker Statement") 1 (Dkt. No. 65).)[9] According to

_____

[9] While Ms. Parker's statement is notarized, the statement does not declare that it was made under penalty of perjury, as required for a declaration under 28 U.S.C. § 1746. *See Tackman v. Goord*, No. 99-CV-0438, 2005 WL 2347111, at *26–27 (W.D.N.Y. Sept. 26, 2005) ("[A] statement may properly be considered in opposition to summary judgment provided the proffered statement conforms to the requirements of 28 U.S.C. § 1746. . . . [However, an affidavit] may not be considered in opposition to [a] summary judgment motion . . . [if the affiant] has not subjected himself to the penalties for perjury should it ultimately be determined that the statements contained therein are false." (citations omitted)). "Unsworn statements are inadmissible in evaluating a motion for summary judgment, but the [C]ourt has nonetheless

22

Ms. Parker, Elsie Cheron ("Cheron"), a clerk of the court, informed her "that there was no such documentation on file for the date of September 14, 2015." (*Id.*) Defendant, on the other hand, has submitted sworn statements proving that the Warrant was on file. The first is Cheron's sworn statement, wherein she states that the Warrant was "maintained [by her] in the ordinary course of business of the [Justice Court]," and that warrants generally "are only accepted for filing in th[e] office when they are provided directly from the [Justice Court]." (Cheron Aff. ¶¶ 2–4.) This is borne out in the record from the October 1, 2015 hearing, when Justice Simon directed, "Ask the Clerk to put [the return of the Warrant] in the file or file it appropriately." (Oct. 1, 2015 Tr. 2.) Even taking Ms. Parker's written statement as true and admissible, which it is not, the alleged encounter between Cheron and Ms. Parker still does not establish a dispute of material fact as to whether Justice Simon himself signed the Warrant. Whether Cheron was able to locate the Warrant on July 2, 2018 is not relevant to the allegation that Justice Simon's signature was forged, particularly when Plaintiff has failed to set forth facts or evidence contradicting the sworn statements of Defendant and Justice Simon stating that Justice Simon did, in fact, sign the Warrant. *See O'Hagan*, 523 F. Supp. at 627–28 (concluding that although the plaintiff submitted an earlier unsworn letter from a judge stating that an allegedly forged warrant did not appear in the court's files, the plaintiff failed to present "evidence to contradict [the judge's later] sworn testimony," in which he positively identified his signature on the warrant).

---

reviewed the statement[] and notes that the facts presented therein—assuming that Plaintiff could present them in an admissible form—do not affect the outcome of this decision." *Vazquez v. Southside United Hous. Dev. Fund Corp.*, No. 06-CV-5997, 2009 WL 2596490, at *2 n.3 (E.D.N.Y. Aug. 21, 2009) (citation omitted); *see also Mills v. Miteq, Inc.*, No. 06-CV-752, 2009 WL 10701646, at *5 (E.D.N.Y. Feb. 20, 2009) (declining to consider statements by a pro se plaintiff and witnesses because the statements were not made under penalty of perjury), *adopted in relevant part by* 2009 WL 10701647 (E.D.N.Y. Mar. 10, 2009).

Second, Plaintiff claims that one of the charges against him was dismissed by Judge Zuckerman because of the alleged illegal search, which Mortel reiterates in her sworn statement. (Compl. 3 ("Once Judge Zuckerman found out about the forgery and the unlawful search[,] he dismissed [] [I]ndictment [No.] 2015-457 . . . ."); Civilian Complaint Report 1 ("The Indictment [No.] 2015-457 . . . was dismissed by Judge Zuckerman [because of] the illegal search . . . .").) As with Plaintiff's forgery allegation, there is no evidence on the record to support this claim, beyond these conclusory statements. In fact, Judge Zuckerman's order directly belies Plaintiff's claim. (*See* Judge Zuckerman Order 14 ("[T]he presentation [of the charges] was defective due to [] improper instructions given to the [g]rand [j]ury . . . .").) In light of Judge Zuckerman's order, no reasonable jury could conclude that this indictment was dismissed due to the alleged forgery of the Warrant. Thus, Plaintiff has not presented *any* evidence to suggest a genuine issue of material fact as to the reason for the dismissal of one of his indictments.

At the Motion To Dismiss stage, the Court declined to consider Cheron's affidavit, submitted by Defendant, but warned Plaintiff that the affidavit "may present an insurmountable obstacle . . . at summary judgment, because Plaintiff has not explained on what basis he learned that [Justice] Simon's signature was forged." (Op. 12 n.6.) Now, after considering the sworn statements and admissible evidence submitted by the Parties, the Court concludes that Plaintiff has presented nothing more than "bald assertions unsupported by evidence," *Houston*, 27 F. Supp. 3d at 351 (citation and quotation marks omitted), to support his claims and that Defendant's evidence is indeed insurmountable.

Accordingly, the Court grants Defendant's Motion as to Plaintiff's Fourth Amendment claim of forgery of the Warrant.

2. Property Damage

Although Defendant does not address Plaintiff's property damage claim in his Motion, the Court declined to dismiss this claim in its previous decision, (Op. 13–14), and thus addresses it now.

"Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment . . . ." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). "However, it is well recognized that officers executing search warrants on occasion must damage property in order to perform their duty," and "before any due process liability can be imposed for property damage occurring in a lawful search, it must be established that the police acted unreasonably or maliciously in bringing about the damage." *Smith v. City of New York*, No. 04-CV-3286, 2010 WL 3397683, at *13 (S.D.N.Y. Aug. 27, 2010) (citation, alteration, and quotation marks omitted), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013); *see also Cody v. Mello*, 59 F.3d 13, 16 (2d Cir. 1995) (same). Moreover, there must be allegations that "more than ordinary disarray and damage incident to the execution of the warrant occurred." *Bender v. Alvarez*, No. 06-CV-3378, 2009 WL 112716, at *7 (E.D.N.Y. Jan. 16, 2009) (citation and quotation marks omitted).

Plaintiff alleges that Defendant "damaged and seized" his property and "destroyed" his home. (Compl. 3; *see also* Civilian Complaint Report 1 (stating that property was "destroy[ed]" during the search).)[10] Although "[d]etermining whether a particular instance[] of property

_____

[10] To the extent that Plaintiff has raised a claim under the Fourth Amendment related to Defendant's seizure of his "safe deposit box[] [and U.S.] currency," (Compl. 3), these items are squarely included on the face of the Warrant, (*see* Search Warrant 1 (directing Defendant to search "[f]or the following property: . . . United States [c]urrency and financial records representing proceeds of drug trafficking; . . . safe deposit box receipts or keys, [and] safes and their respective keys").) Although not raised in the Complaint, and thus not addressed by the Court in its previous Opinion, Plaintiff has claimed in letters to the Court that guns were illegally

damage was unreasonable or malicious is ordinarily not amenable to resolution at the summary judgment stage[,] where a plaintiff has not produced any documentary evidence to support his allegations, such as photos of broken property, receipts documenting repairs, or sworn testimony attesting to specific damages, he fails to meet his burden to set out specific facts showing a genuine issue for trial[,] and thus cannot survive a summary judgment motion."  *Vaher*, 133 F. Supp. 3d at 592 (citations and quotation marks omitted).  Here, Plaintiff fails to specify any specific property that was destroyed.  Instead, he merely alleges that damage occurred, which is insufficient to "establish[] that [Defendant] acted unreasonably or maliciously" during the search.  *Smith*, 2010 WL 3397683, at *13 (citation omitted); *see also Rogers v. Cartagena*, No. 10-CV-9285, 2013 WL 1285169, at *6 (S.D.N.Y. Mar. 28, 2013) (granting summary judgment because there was "no record evidence to support" claims of property damage during search); *Pina v. City of Hartford*, No. 07-CV-0657, 2009 WL 1231986, at *8 (D. Conn. Apr. 29, 2009) ("[The p]laintiffs have put forth no evidence of the destruction of property.  [The executing

---

taken from his home because guns did not specifically appear in the Warrant.  (*See* Dkt. Nos. 55, 65.)  The guns removed from Defendant's property, however, appear to have been located in plain view, on top of the safe and inside of the safe, (Def.'s 56.1 ¶ 21 (citing Def.'s Aff. ¶ 14; Warrant Inventory; Judge Zuckerman Order 9)), and the search and seizure of "safes" was specifically denoted in the Warrant, (Search Warrant 1).  *See Vaher v. Town of Orangetown, N.Y.*, 133 F. Supp. 3d 574, 590 (S.D.N.Y. 2015) ("In addition to items specifically listed in the warrant, the 'plain view' exception to the warrant requirement 'authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity.'" (quoting *United States v. Gamble*, 388 F.3d 74, 76 (2d Cir. 2004)); *Merriweather v. City of New York*, No. 12-CV-5258, 2015 WL 57399, at *6 (S.D.N.Y. Jan. 5, 2015) ("[T]he Fourth Amendment does not authorize the seizure of items other than those identified in or reasonably covered by the terms of the search warrant, unless it is 'immediately apparent' that such items are contraband or illegal on their face." (citing *Horton v. California*, 496 U.S. 128, 135–36 (1990)).  Even if Plaintiff had included a claim for improper seizure of guns in the Complaint, he has not raised any issues of fact to suggest that the guns were improperly seized.  Indeed, one is hard pressed to imagine law enforcement officers not seizing guns in a narcotics-related search.

officer] admits that personal property was thrown around during the search . . . but there is no indication that the detectives damaged the plaintiff's property beyond what was necessary to effectuate a complete search of the apartment." (citation and quotation marks omitted)); *Lynch*, 567 F. Supp. 2d at 467 n.5 ("As for the fact that the officers emptied dresser drawers during the search, we do not doubt that this resulted in inconvenience to [the] plaintiffs, but the argument that it was a constitutional violation is baseless." (citation omitted)); *Lewis v. City of Mount Vernon*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997) ("[The] [p]laintiffs have presented no evidence that the officers wantonly damaged or destroyed property or conducted the search in a manner inconsistent with its professed purpose[.] . . . Rather, the only inference that can be drawn is that the officers conducted a thorough search, as they are permitted to do in executing a warrant.").

Although Plaintiff submitted photographs of alleged damage with his Proposed Amended Complaint, which he subsequently withdrew, those photographs, which are blurry and difficult to see, appear to depict nothing more than general disarray, and thus doom this claim. (Proposed Am. Compl. 65–67.) *See Glover v. City of New York*, No. 15-CV-4899, 2018 WL 4906253, at *31 (E.D.N.Y. Oct. 9, 2018) ("[T]he [c]ourt cannot discern any damage from the photograph in the record. To the extent this image reflects any damage, it constitutes minor damage that does not give rise to a Fourth Amendment violation." (citations and quotation marks omitted)); *Brown v. City of Utica*, 854 F. Supp. 2d 255, 262 (N.D.N.Y. Apr. 12, 2012) ("The 'destruction' depicted in the pictures [attached by the plaintiff] includes a cracked glass cabinet door, a closet door off its hinges, garbage strewn outside the home, clothing scattered on the floor inside the home, a radiator with its metal covering removed, and what appears to be a broken mirror or glass picture frame. However, the scene depicted in these images falls short of establishing that [the] defendants acted unreasonably or maliciously."); *Diaz v. City of New York*, No. 00-CV-

2944, 2006 WL 3833164, at \*7 (E.D.N.Y. Dec. 29, 2006) (finding that most of the photographs submitted by the plaintiffs "illustrate damage or disarray consistent with a reasonable search for narcotics and narcotics paraphernalia"). Given the lack of Plaintiff's specific allegations and the legality of the Warrant and search executed pursuant to it, the Court finds no dispute of material fact as to whether Defendant caused unreasonable or malicious damage during the search.

## III. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 99), enter judgment for Defendant, close this case, and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated:     December 2, 2019
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE